HYLAND B. PENNINGTON *vs.* SAMUEL G. CHANDLER, Sheriff.

On an issue of property in replevin, the *onus* is with the plaintiff.

A purchaser at constable's sale acquires property, though the proceeding be irregular, if founded on judgment and execution.

A constable's return may be objected to before the justice.

The officer's authority cannot be controverted collaterally.

The statute of frauds does not apply to transfers of property by judicial sale.

But a sale of property, however public, may be vitiated by fraud.

REPLEVIN for sundry household goods, which had been sold by Sheriff Chandler, at the suit of the Farmers' Bank against William R. Pennington. It was claimed that these goods belonged to the plaintiff, he having purchased them at constable's sale, on the 16th day of December, 1851, and that they were left with William R. Pennington, on a written agreement that he would pay rent for them.

Several witnesses were examined and, the case was argued by *Patterson*, for the plaintiff, and *Bayard*, for the defendant.

*The Court* charged as follows:—

The case rested on the question of the right of property in these goods, and on that point the burden of proof was upon the plaintiff, (ante., 226, *McIlvaine's adm'r.* vs. *Holland*.) He attempts this by evidence of four judgments entered on four several judgment notes, at the suit of Hyland B. Pennington against William R. Pennington, before Justice Robinson, and four executions issued thereon, December 2, 1851, returnable March 2, 1852, but not in fact returned (though endorsed) until May 12, 1853; when they were handed by Constable Hawkins to Esquire Buzine, the successor of Justice Robinson. Two of these executions were endorsed, "satisfied December 16, 1851, H. B. Pennington;" and the other two "levied as per inventory and appraisement, the goods sold, December 16, 1851, and proceeds applied to prior executions—Thomas Hawkins, constable." At this sale the goods were bought by Hyland B. Pennington, the father, and left with William R. Pennington, the son, under a written agreement to pay rent, or hire, for them. After this the bank obtained a judgment and execution against William R. Pennington, and levied on his property.

It was objected to the validity of the constable's sale under which plaintiff claimed—1. That the executions were never returned; or, if ever, not until long after the return day. 2. That there was no

evidence of a lawful sale, there being no proof of notice, nor any statement of notice in the constable's return. 3. That Hawkins was not a constable of the county, but only of Wilmington city, and had no authority to execute this process.

A purchaser of goods at constable's sale must show a judgment and execution, but is not bound to prove the regularity of the proceedings of the constable under the execution. These matters are to be objected to before the justice. Neither is it necessary in suits between third persons, or collateral proceedings, to show the appointment of the constable. It is sufficient if the justice's record shows that the execution was directed to him as constable, and that he acted in that character. It is not competent in a collateral proceeding to contradict the record.

This is a general rule—that the record and proceedings of a court of competent jurisdiction over the subject matter cannot be controverted in a collateral proceeding, on the ground of irregularity. These proceedings are within the proper jurisdiction of a justice of the peace; who, though proceeding under powers conferred by statute, must be taken to have every incidental, as well as all the direct powers necessary to his jurisdiction. We do not see then, how it is assumed that a justice of the peace who has the power to order a sale, cannot hear objections to the regularity of proceedings under such order; or in other words, hear objections to the return of a constable on execution process.

On the general question in the case. The statute of 14 *Geo.* 2, (statute of frauds) makes sales of personal property void where the possession remains in, or returns to, the vendor; but this does not apply to public or judicial sales, where the publicity avoids the danger of fraud, which the statute provides against. (3 *Harr. Rep.*, 293, *Perry* vs. *Foster.*) But it does not follow that every public sale, with or without delivery, is good. The question of fraud or bad faith is always open; and fraud vitiates every sale. And this refers not to the moral, but the legal character of the act. If the purpose of selling property be to cover it merely, so as to shield it from creditors; that purpose, though it might be prompted even by benevolent motives, is an illegal purpose, and cannot be carried out by the aid of courts of justice.

If therefore the sale under these executions was not a *bona fide* sale in payment of a real debt, but was to cover the property of William R. Pennington; the plaintiff, who purchased his goods would

not acquire a legal title to them as against other creditors; and if any of the property here replevied was not purchased at such sale, the defendant would in the one case be entitled to a verdict for the whole, or in the latter case, to such part of the property.

Verdict for the defendant, for the value of a single article replevied.

*Patterson,* for plaintiff.
*Bayard,* for defendant.